UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TOP GUN AMMO SALES, LLC ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:21-cv-00770-SEP |
| ) | |
| COF TECHNOLOGIES, LLC, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

Before the Court are the Motion to Dismiss filed jointly by Defendants COF Technologies, LLC (COF) and American Defense Technologies, LLC (ADT) (together, the LLC Defendants) and the Motion to Dismiss filed by Defendants McKayl Ruesch, William Uicker, Andrew McCorkle, and Brad McCorkle (collectively, the Individual Defendants). Docs. 19, 21. Both motions are fully briefed. For the reasons set forth below, the LLC Defendants' Motion to Dismiss is granted in part and denied in part, and the Individual Defendants' Motion to Dismiss is granted.

**FACTS AND BACKGROUND**[1]

Plaintiff Top Gun Ammo Sales, LLC, is a Missouri company with its principal place of business in Jefferson County, Missouri. Doc. 3 ¶ 1. The LLC Defendants are Utah companies with their principal places of business in Utah. *Id.* ¶¶ 2, 3; Doc. 20 at 3. Defendant McKayl Reusch, a Utah citizen, is the sole member of COF. Doc. 3 ¶ 4; Doc. 20 at 3. Defendant William Uicker, a California citizen, is the sole member of William Joseph Cara, LLC, a Delaware company, which is in turn the sole member of ADT. Doc. 20 at 3; Doc. 3 ¶ 5. Defendant Andrew McCorkle, a Utah citizen, is ADT's Chief Operating Officer. Doc. 3 ¶ 6; Doc. 22 at 4. Defendant Brad McCorkle, a Utah citizen, was an employee of ADT during the events that gave rise to this lawsuit. Doc. 3 ¶ 7; Doc. 22-4 (Defs. Ex. D).

Top Gun entered into an agreement with COF for the purchase of six million rounds of 9-millimeter ammunition at a price of $.40 per round. Doc. 3 ¶ 10. COF was to deliver

---

[1] For purposes of these motions, the Court assumes that the factual allegations in the Complaint are true. *See Neitzke v. Williams,* 490 U.S. 319, 326-27 (1989).

1

500,000 rounds per week for eight weeks, beginning February 19, 2021. *Id.* Top Gun paid COF an initial deposit of $200,000. *Id.* ¶ 11. When COF delivered only 25,000 rounds, Top Gun claimed that COF had breached the agreement. Top Gun and COF agreed to a forbearance agreement wherein Top Gun would temporarily forbear on its right to enforce the original agreement in exchange for COF shipping an additional 50,000 rounds of ammunition free of charge. *Id.* ¶ 13. COF failed to deliver that shipment, and Top Gun declared that the original agreement had been breached. *Id.* ¶ 15.

As a result of COF's alleged breach, Top Gun commenced this action, alleging eight counts against the various defendants:

> **Count I**: breach of contract against COF and the Individual Defendants;
> **Count II**: negligent misrepresentation against COF and the Individual Defendants;
> **Count III**: fraudulent misrepresentation against COF and the Individual Defendants;
> **Count IV**: unjust enrichment against COF and the Individual Defendants;
> **Count V**: tortious interference against ADT and the Individual Defendants;
> **Count VI**: civil conspiracy against all Defendants;
> **Count VII**: successor liability against ADT;
> **Count VIII**: unjust enrichment against ADT.

Doc. 3.

The LLC Defendants filed a joint Motion to Dismiss on July 29, 2021. Doc. 19. They argue that the Complaint fails to establish personal jurisdiction over them and that they do not have sufficient contacts with Missouri to be subject to suit in this forum. Doc. 20 at 2-11. In the alternative, the LLC Defendants argue that Counts II, III, V, and VI fail to state a claim upon which relief may be granted. *Id.* at 13-15.

The Individual Defendants also filed a joint Motion to Dismiss on July 29, 2021. Doc. 21. They also argue that the Complaint fails to establish personal jurisdiction over them because they do not have sufficient contacts with Missouri. Doc. 22 at 5-8. In the alternative, the Individual Defendants argue that Counts I, II, III, IV, V, and VI fail to state a claim against them upon which relief may be granted. Doc. 22 at 11-15.

The Complaint—which refers to COF, Reusch, Uicker, A. McCorkle, and B. McCorkle collectively as "COF Defendants"—states that "COF Defendants solicited business from and conducted business with Top Gun, in Jefferson County, Missouri, COF Defendants made numerous, false representations to Top Gun, in Jefferson County, Missouri, and Top Gun was first injured by Defendants in Jefferson County, Missouri." Doc. 3 ¶ 8. Plaintiff also alleges

that COF "delivered to Top Gun" at least one shipment of ammunition pursuant to the agreement, *id.* ¶ 12, but Plaintiff does not specify where that shipment was delivered. The Complaint lacks any further jurisdictional allegations. For example, the Complaint does not state where the contract was negotiated, signed, or to be substantially performed; it does not state where Defendants are alleged to have conspired to defraud Top Gun, it does not include information about where or how the parties communicated, and it does not allege that COF, ADT, or any of the Individual Defendants were ever physically present in Missouri.

The Complaint also fails to attach the contract sued upon. The only relevant agreement before the Court is the "Purchase Agreement" provided by Defendants. *See* Doc. 20-1 (Defs. Ex. A). Although Top Gun "does not concede" that the Purchase Agreement is the contract they have sued upon, *see* Doc. 27 at 5 n.1, it provides no alternative contract as the basis for its claims. A plaintiff's pleadings may be tested by "exhibits supporting or opposing the motion." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011). The Court will therefore consider the Purchase Agreement. The Purchase Agreement does not indicate where the contract was negotiated, entered, or signed. Regarding deliveries, it simply states: "Delivery terms shall be agreed by the parties in connection with each purchase order." Doc. 20-1 at 2.

The parties have also submitted affidavits and exhibits supporting their respective positions. Defendants have provided affidavits from Reusch, Doc. 20-2; Uicker, Doc. 20-3; A. McCorkle, Doc. 22-3; and B. McCorkle, Doc. 22-4. Plaintiff has submitted an affidavit from Top Gun President, Stanley Dix, Doc. 27 at 14, and an exhibit containing screen shots of text messages between Dix and "Brad"; an unknown individual and "Brad M"; Dix and "William"; and Dix, "WU," and "Andrew." *See* Doc. 27 at 17-34 (Pl. Ex. A).

**LEGAL STANDARD**

**A. Rule 12(b)(2)**

When a defendant challenges personal jurisdiction, the plaintiff must make a prima facie showing that jurisdiction exists. *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (citing *K-V Pharm.*, 648 F.3d at 591-92). That showing is made "by pleading sufficient facts 'to support a reasonable inference that the defendant can be subjected to jurisdiction within the [forum].'" *K-V Pharm.*, 648 F.3d at 591-92 (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)). A plaintiff's prima facie showing is tested

"not by the pleadings alone, but by affidavits and exhibits supporting or opposing the motion." *K-V Pharm.*, 648 F.3d at 592. While the party seeking to establish jurisdiction carries the burden, the Court views the evidence in the light most favorable to the nonmoving party and resolves factual conflicts in its favor. *Fastpath*, 760 F.3d at 820.

### B. Rule 12(b)(6)

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a complaint. When considering a Rule 12(b)(6) motion, a court assumes the factual allegations of a complaint are true, *Neitzke*, 490 U.S. at 326-27, and draws all reasonable inferences in the non-movant's favor. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) (citation omitted).

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Bell Atlantic Corp. v. Twombly,* the Supreme Court clarified that Rule 8(a)(2) requires complaints to contain "more than labels and conclusions"; "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. 544, 555 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009). Specifically, to survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). The issue in considering such a motion is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. *See Twombly,* 550 U.S. at 556.

### DISCUSSION

### I. Personal Jurisdiction

A federal court may exercise personal jurisdiction over a nonresident defendant in a diversity case if: (1) the facts presented satisfy the requirements of the state's long-arm statute; and (2) the exercise of personal jurisdiction does not violate due process. *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996).

### A. LLC Defendants

#### 1. Missouri Long-Arm Statute

The Missouri long-arm statute provides that a nonresident individual or entity is subject to the jurisdiction of Missouri courts for, *inter alia*, causes of action that arise out of the transaction of any business within this state, the making of any contract within this state,

or the commission of a tortious act within this state. MO. REV. STAT. § 506.500.1. Missouri courts must "construe broadly the 'transaction of business' element in the long arm statute so that even a single transaction may confer jurisdiction, if that is the transaction that gives rise to the suit." *Products Plus, Inc. v. Clean Green, Inc.*, 112 S.W.3d 120, 124 (Mo. App. 2003) (quotation marks and citations omitted). The Missouri Supreme Court has explained that the "ultimate objective [of the long-arm statute] was to extend the jurisdiction of this state over non-resident defendants to the extent permissible under the Due Process Clause of the Fourteenth Amendment." *State ex rel. Deer & Co. v. Pinnell*, 454 S.W.2d 889, 892 (Mo. banc 1970).

Plaintiff has provided sufficient facts to create a reasonable inference that COF transacted business in Missouri. According to Stanley Dix, President of Top Gun, he discussed the purchase of bulk ammunition with COF via telephone and written communications directed at him in Missouri. Doc. 27 at 14 (Dix Affidavit) ¶¶ 6, 7, 8. Dix also stated that two deliveries were made to Top Gun in Missouri in March 2021, and a third delivery was made to Top Gun in Missouri in April 2021. Dix Affidavit ¶¶ 10, 11, 12. Dix further stated that, after the third shipment had entered Missouri, COF instructed YRC Freight to place a hold on the shipment before it was ultimately released to Plaintiff. *Id.* ¶ 12. The facts thus show that COF reached into Missouri in order to conduct its business with Top Gun.

ADT, as COF's alleged successor, is subject to Missouri's long-arm statute on that basis as well. *See Massi v. Holden*, 2011 WL 6181258, at *5 (D. Minn. Dec. 13, 2011) (quoting *Mid-Continent Eng'g, Inc. v. Toyoda Mach. USA, Corp.*, 2009 WL 1272142, at *2 (D. Minn. May 5, 2009) ("[P]ersonal jurisdiction over a corporate successor may be based on its predecessor's contacts with the forum, provided the successor would be liable for its predecessor's acts under the forum's law.")).

### 2. Constitutional Due Process

Due process requires that defendants have "minimum contacts" with the forum state such that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe v. Wash.*, 326 U.S. 310, 319 (1945). The defendant's contacts must be more than "random," "fortuitous," or "attenuated." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). "The central question is whether a defendant has purposefully

5

availed itself of the privilege of conducting activities in the forum state and should, therefore, reasonably anticipate being haled into court there." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003) (citing *Burger King*, 471 U.S. at 475; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). "Critically, it is [the defendant's] 'contacts with the forum *state* which are of importance in determining the propriety of personal jurisdiction, not [their] contacts with a *resident* of the forum state.'" *See Mng 2005, Inc. v. Paymentech*, 2020 WL 6582660, at *5 (E.D. Mo. Nov. 9, 2020) (quoting *Rand & Son Constr. Co. v. Thaxton Elec. Co., Inc.*, 2005 WL 1801714, at *2 (W.D. Mo. July 28, 2005)) (emphasis added). "[T]he plaintiff cannot be the only link between the defendant and the forum. . . . it is the defendant's conduct that must form the necessary connection with the forum state that is the basis for its jurisdiction over him." *Walden v. Fiore*, 571 U.S. 277, 285 (2014); *see also Burger King*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.").

The Eighth Circuit has established five factors to consider when determining whether personal jurisdiction exists:  (1) the nature and quality of the contacts; (2) the quantity of contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983). The first three factors are the most important. *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 226 (8th Cir. 1987).

### a.  Factors (1) and (2): Nature, quality, and quantity of contacts

COF's alleged contacts with Missouri have been brief, isolated, and minimal. The Complaint alleges only that "COF Defendants solicited business from and conducted business with Top Gun in Jefferson County, Missouri, COF Defendants made numerous, false representations to Top Gun, in Jefferson County, Missouri, and Top Gun was first injured by Defendants in Jefferson County, Missouri." Doc. 3 ¶ 8. That allegation is merely a "formulaic recitation" of the requirements for personal jurisdiction, *Twombly*, 550 U.S. at 555, and fails to provide "sufficient facts to support a reasonable inference" that jurisdiction exists. *K-V Pharm.*, 648 F.3d at 592. The affidavits provide additional information, however.

6

COF is neither organized nor headquartered in Missouri. Doc. 3 ¶ 2; Doc. 20-2 ¶ 2. COF has no offices, employees, or any other business operations in Missouri. Doc. 20-2 ¶ 9. COF does not specifically target Missouri for its sale of bulk ammunition; it sells its products in all fifty states. *Id.* ¶ 11. Plaintiff's claim is primarily based on breach of contract, but there is no evidence that the contract was negotiated, signed, or intended to be performed in Missouri. COF's business with Top Gun was limited to the allegedly breached contract, which contemplated an eight-week relationship. *Id.* ¶ 9; Doc. 3 ¶ 10.

COF's contacts with Missouri consist of COF's communications with Dix, a Missouri resident, Doc. 27 at 14 ¶¶ 7, 8; the delivery of three shipments of ammunition to Dix in Missouri, *id.* ¶¶ 10, 11, 12; Defendants' directive that YRC Freight place a hold on the third shipment, *id.* ¶ 12; and Defendants text message to Dix of a photo of the pallets of ammunition to be delivered, and the actual delivery, which "consisted of completely difference pallets . . . [and] significantly less ammunition," *id.* ¶ 12.

Alone, COF's communications with Dix are insufficient. *See Walden*, 571 U.S. at 285-85 ("[T]he plaintiff cannot be the only link between the defendant and the forum."). But the Court may consider COF's communications with Dix and YRC Freight together with its deliveries to Missouri. Plaintiff relies on *K-V Pharmaceuticals* for the proposition that deliveries into the forum state subject the defendant to personal jurisdiction; however, in *K-V*, the contract contained an express term that delivery be made to Missouri. 648 F.3d at 594. Here, there is no such term. Plaintiff also relies on *New Dawn Natural Foods, Inc. v. Natural Nectar Corp.*, 670 F. Supp. 869, 872-73 (E.D. Mo. 1987), for the proposition that the Eighth Circuit has recognized that nonresident sellers may be more easily sued in the forum state than nonresident buyers. *New Dawn* relied on *Electro-Craft Corp. v. Maxwell Electronics Corp.*, 417 F.2d 365, 368 (8th Cir. 1969) ("[A] nonresident seller subjects itself to the obligation of amenability to suit in return for the right to compete for sales."). The validity of *Electro-Craft*, which applied a distinction between nonresident sellers and nonresident buyers *under Minnesota law*, has since been called into question. *See Aaron Ferer & Sons Co. v. Diversified Metal Corp.*, 564 F.2d 1211, 1214 (8th Cir. 1977); *Scullin Steel Co. v. National Ry. Utilization Corp.*, 676 F.2d 309, 313 (8th Cir. 1982); *Jennie-O Turkey Store, Inc. v. Food Movers Intern., Inc.*, 2007 WL 2580599, at *4 n. 5 (D. Minn. Sept. 5, 2007). According to *Scullin Steel*, "the ultimate test is whether the nonresident defendant, either as seller or buyer, has

7

performed some act by which it has purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." 676 F.2d at 314 (cleaned up). By communicating with a Missouri buyer, organizing three separate deliveries to Missouri for that buyer, and contacting a freight company in Missouri to place a hold on a shipment already present in Missouri, COF purposefully availed itself of the privilege of conducting business in Missouri, thus invoking Missouri's protection and laws.

### b. Factor (3): Relation of the cause of action to the contacts

The third factor requires a distinction between general and specific jurisdiction. General jurisdiction exists where a defendant's contacts with the forum state are "so 'continuous and systematic' as to render them essentially at home in the forum state." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317). The Court cannot exercise general jurisdiction over COF. Absent "exceptional" circumstances, "the paradigm forums in which a corporate defendant is at home . . . are the corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (internal quotation marks and citations omitted). COF is a Utah limited liability company, its sole member is a Utah citizen, and its principal place of business is in Utah.

Plaintiff argues that the Court may nonetheless exercise specific jurisdiction over COF. Specific jurisdiction exists if the cause of action arises out of the defendant's contacts with the forum. *See Walden*, 571 U.S. at 284 ("Specific" or "case-linked" jurisdiction "depends on an affiliation between the forum and the underlying controversy") (cleaned up) (citation omitted); *Daimler AG v. Bauman*, 571 U.S. 117, 126-27 (2014) ("'[T]he commission of some single or occasional acts of the corporate agent in a state' may sometimes by enough to subject the corporation to jurisdiction in the State's tribunals with respect to suits relating to that in-state activity.") (quoting *Int'l Shoe*, 326 U.S. at 318). But "[f]or a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a *substantial connection* with the forum State." *Walden*, 571 U.S. at 284. (emphasis added). "[T]he relationship must arise out of contacts that the 'defendant *himself*' creates with the forum state." *Id.* (quoting *Burger King*, 471 U.S. at 475) (emphasis in original). The "analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts

8

with persons who reside there." *Id.* (citing *Int. Shoe*, 326 U.S. at 319). "[P]hysical presence in the forum is not a prerequisite to jurisdiction," *id.* (citing *Burger King*, 471 U.S. at 478), but "physical entry into the State—either by the defendant in person or through an agent, *goods*, mail, or some other means—is certainly relevant contact." *Id.* (citation omitted). Here, COF's contact with Missouri goes beyond its communications with Top Gun. COF organized three shipments of goods to Missouri and contacted a freight company to place a hold on a shipment that was already being held in Missouri. COF has thus "reached out beyond their State and into another." *Walden*, 571 U.S. at 285 (cleaned up). Those actions create a substantial connection to Missouri and are directly related to the cause of action. COF thus has sufficient minimum contacts with Missouri for the Court to exercise specific personal jurisdiction over it. Because the first three factors are the most important, neither of the final two factors would alter that position. ADT, as COF's alleged successor, is subject to jurisdiction on that basis as well. *See Massi*, 2011 WL 6181258, at *5 (quoting *Mid-Continent Eng'g*, 2009 WL 1272142, at *2).

### B. Individual Defendants

"Each defendant's contacts with the forum state must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984). The Complaint contains no factual allegations directed at any specific Individual Defendant. Instead, the Complaint pleads in group fashion that "COF Defendants" solicited and conducted business in Missouri, and "COF Defendants" made numerous false representations to Top Gun in Missouri. Doc. 3 ¶ 8 (emphasis added). The Complaint thus lacks factual specificity from which the Court could infer which of the Individual Defendants are alleged to have conducted business in Missouri, made false representations in Missouri, or both.

The Complaint's deficiencies are not remedied by Dix's affidavit, either. Dix states that he "communicated with a number of individuals, including but not limited to the Individual Defendants." Doc. 26 at 15 (Dix Affidavit) ¶ 7. But that too fails to apprise the Court of which Individual Defendants Dix communicated with or what he communicated with them about.

Plaintiff also provided the Court with an exhibit containing screen shots of four different text message chains. *See* Doc. 27 at 17-34. Drawing all reasonable inferences and construing the facts in Plaintiff's favor, *Fastpath*, 760 F.3d at 820, the Court finds that the text

9

messages are between (a) Dix and B. McCorkle, *id.* at 17-22; (b) an unknown individual and B. McCorkle, *id.* at 23-27; (c) Dix and Uicker, *id.* at 28; and (d) Dix, A. McCorkle, and Uicker, *id.* at 28-34.  In the first chain, B. McCorkle communicates with Dix between March 11th and 12th about what appears to be one of the first two shipments.  In the second chain, B. McCorkle communicates with an unknown individual on an unknown date about what appears to be the same shipment.  In the third chain, Dix texts Uicker on March 16th to ask if a shipment had been sent out yet; Uicker responds that it had been.  And the fourth chain consists of an April 8th discussion between Dix and A. McCorkle about the YRC Freight hold. Dix explains to McCorkle that "Mikala" from YRC informed him that a hold was placed on the order.  McCorkle responds that no one from their end placed a hold on the order, he (McCorkle) spoke to Mikala and was told there was no hold on the order, and their broker handles communications with the freight company.  Dix then sends what he claims is a picture from COF of the pallet of ammunition that he was supposed to receive and a second picture of what he actually received, which he complains is significantly less.

### *1. Missouri Long-Arm Statute*

Plaintiff has failed to provide any facts regarding Reusch's contacts with Missouri, and Reusch is therefore not subject to personal jurisdiction under the Missouri long-arm statute. Plaintiff has provided minimal facts regarding the contacts of the remaining Individual Defendants, but because courts are instructed to interpret the transaction of any business clause broadly, *Products Plus*, 112 S.W.3d at 124 (citations omitted), the Court finds that Uicker, A. McCorkle, and B. McCorkle's contacts with Missouri are sufficient to constitute the transaction of business under the long-arm statute.

### *2. Constitutional Due Process*

Plaintiff has not provided sufficient facts to create a reasonable inference that any of the Individual Defendants has sufficient contacts with Missouri for the exercise of personal jurisdiction to comport with due process.

The Court cannot exercise general jurisdiction over the Individual Defendants.  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile."  *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cnty.*, 137 S. Ct. 1773, 1780 (2017) (quotation marks and citation omitted).  Uicker is a citizen of California. A. McCorkle and B. McCorkle are both citizens of Utah.  Thus, jurisdiction depends on

whether the Individual Defendants had sufficient suit-related minimum contacts with Missouri.

The Court cannot exercise specific jurisdiction over the Individual Defendants. Though their contacts may be related to the cause of action, the Individual Defendants' contacts are insufficient for two reasons: (1) the defendants were acting in their capacity as employees, agents, or officers of COF; and (2) even considering their contacts, those contacts are insufficient when each Individual Defendant is analyzed separately.

First, even if the Individual Defendants were shown to have sufficient contacts, those contacts would not subject them to the Court's jurisdiction in their individual capacities, as their actions were taken pursuant to their duties as employees, agents, or officers of COF.

> The mere fact that a corporation is subject to local jurisdiction does not necessarily mean its nonresident officers, directors, agents, and employees are suable locally as well.  For jurisdictional purposes, the acts of corporate officers and directors in their official capacities are the acts of the corporation exclusively and are thus not material for purposes of establishing minimum contacts as to the individuals.  Implicit in this principle is the consideration that corporations are separate legal entities that cannot act on their own but must do so through their appointed representatives. Accordingly, acts performed by these individuals, in their official capacities, cannot reasonably be attributed to them as individual acts creating personal jurisdiction.

*Affordable Healthcare, LLC v. Protus IP Solutions, Inc.*, 2009 WL 775582, at *2-3 (E.D. Mo. Mar. 20, 2009) (quoting *Colt Studio, Inc. v. Badpuppy Enter.*, 75 F. Supp. 2d 1104, 1111 (C.D. Cal. 1999) (citing *Calder,* 465 U.S. at 790)).

Top Gun also argues that, even if the defendants "operated only in a representative capacity, their commission of extraterritorial tortious conduct having consequences in Missouri is sufficient to satisfy due process." Doc. 26 at 7 n.2.  But "[t]o hold an officer of a corporation liable, he must be shown to have had actual or constructive knowledge of the actionable wrong and participated therein."  *Protus*, 2009 WL 775582, at *2 (quotation marks omitted) (quoting *Osterberger v. Hites Constr. Co.,* 599 S.W.2d 221, 229 (Mo. App. 1980)).  Top Gun has failed to allege facts or provide evidence showing that any specific Individual Defendant had actual or constructive knowledge of and participated in tortious conduct.

The closest potential instance of individually attributable tortious conduct is found in Dix's Affidavit and accompanying text messages.  *See* Doc. 26 at 16-17, 33-34.  According to

11

Dix: "In advance of the delivery, Defendants sent me a text message with a photo of the pallets of ammunition to be delivered. When the delivery arrived, it only consisted of completely different pallets than in the original photo and was significantly less ammunition." Doc. 26 at 17 ¶ 12. The accompanying text messages show that Dix texted a picture of three pallets of ammunition to Uicker and A. McCorkle with the accompanying message: "This is the picture of what you sent to me that was shipping." Doc. 27 at 34. Dix then texted a second picture of a single pallet containing several boxes and several other boxes strewn across the floor, with the accompanying message: "This is what I just got." *Id.* But Top Gun fails to allege, nor is there evidence to suggest, that either A. McCorkle or Uicker specifically sent the first picture to Dix. Dix states only that "Defendants" sent him a picture. Thus, even accepting as true the fact that someone at COF sent Dix that picture with the intent to mislead him into thinking that he was receiving a larger shipment than what COF was actually sending, based on the facts presented, the Court cannot attribute that act to any specific Individual Defendant.

Second, although the Individual Defendants' suit-related contacts may *collectively* be sufficient to find that *COF* has a sufficient suit-related connection to Missouri, they are not sufficient to show the same for the Individual Defendants. The facts show that B. McCorkle was involved in planning the logistics of one or two of the shipments; Uicker had some apparent background involvement in the shipment B. McCorkle was handling and was involved in a brief discussion with Dix regarding that shipment; and A. McCorkle was involved only in the YRC Freight discussion. Those contacts, viewed separately, do not create the necessary substantial connection to exercise personal jurisdiction over them. *Walden*, 571 U.S. at 284.

Because the Court cannot exercise jurisdiction over the Individual Defendants in accord with due process, they must be dismissed from this case.

## II. **Failure to State a Claim**

### A. COF

In the alternative, COF moves for dismissal of Counts II, III and VI against it for failure to state a claim under Rule 12(b)(6). Doc. 19 at 2. For the reasons set forth below, COF's Motion is granted as to Counts II and III and denied as to Count VI.

### *1. Count II:  Negligent Misrepresentation*

To plead a claim for negligent misrepresentation under Missouri law, the plaintiff must allege sufficient facts that, taken as true, demonstrate:

(1) the speaker supplied information in the course of his business;

(2) because of the speaker's failure to exercise reasonable care, the information was false;

(3) the information was intentionally provided by the speaker for the guidance of limited persons in a particular business transaction;

(4) the hearer justifiably relied on the information; and

(5) due to the hearer's reliance on the information, the hearer suffered a pecuniary loss.

*Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 134 (Mo. banc 2010) (citation omitted).  "The particularity requirements of Rule 9(b) do not apply to a claim of negligent misrepresentation."  *Hill v. Bank of Am., N.A.*, 2016 WL 6441599, at *5 (E.D. Mo. Nov. 1, 2016) (collecting cases).  Accordingly, Count II need comply with only Rule 8's pleading requirements.

COF argues that Top Gun has failed to allege "that COF failed to exercise reasonable care and competence in making any intentional representation(s) to Plaintiff in the course of its business, which were false—whether within the four corners of the contract or otherwise."  Doc. 20 at 15.  COF also argues that "Plaintiff's breach of contract cause of action naturally subsumes its negligent misrepresentation" claims.  *Id.*  Top Gun does not address those arguments in its Opposition.  Rather, Top Gun cites *Williams v. Metro. Police Dep't of City of St. Louis*, 2005 WL 2491459, at *2 (E.D. Mo. Oct. 7, 2005) for the proposition that, "under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case[,]" and thus argues that it has met the "[f]ederal notice pleading requirements."  Doc. 27 at 10-11 (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *abrogated by Twombly*, 550 U.S. at 562-63, 570).  Contrary to *Williams*'s pre-*Twombly* statement of the law, Top Gun must indeed allege enough facts that, taken as true, establish a prima facie case for negligent misrepresentation that is plausible on its face.  *Twombly*, 550 U.S. at 570.  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.

The Complaint sufficiently alleges four of the five required elements for a claim of negligent misrepresentation, but it fails to allege any facts supporting the second element. The Complaint states: "The COF Defendants did not exercise reasonable care in rendering the aforementioned representations and, as a result, the aforementioned representations were false." Doc. 3 ¶ 18. As a mere recitation of the requisite element, that allegation is insufficient. *See Twombly*, 550 U.S. at 545; *Iqbal*, 556 U.S. at 678.

Because Top Gun fails to allege sufficient facts to establish a claim for negligent misrepresentation, Count II is dismissed.

### 2. Count III: Fraudulent Misrepresentation

To plead a claim for fraudulent misrepresentation under Missouri law, the plaintiff must show:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury.

*Renaissance Leasing*, 322 S.W.3d at 131-32; *accord Gast v. Ebert*, 739 S.W.2d 545, 547 (Mo. banc 1987).

A claim for fraudulent misrepresentation is subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 439 (8th Cir. 2013). Rule 9(b) requires that a plaintiff "state with particularity the circumstances constituting fraud or mistake." "To satisfy the particularity requirement of FRCP 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006). In essence, "the complaint must identify the who, what, where, when, and how of the alleged fraud." *Id.* (quotation marks and citation omitted).

The Complaint fails to sufficiently plead the fourth, fifth, and eighth elements of fraudulent misrepresentation. As to the fourth element, the Complaint alleges that "COF Defendants knew their representations were false." Doc. 3 ¶ 28. That allegation is a

14

conclusory, "formulaic recitation" of the elements that fails to satisfy even the lesser standard of Rule 8. *See Twombly*, 550 U.S. at 570. But it also fails, under Rule 9(b), to allege "how" or "when" COF knew its representation was false. *St. Luke's Hosp.*, 441 F.3d at 556; *see* Fed. R. Civ. Proc. 9(b). The only related allegation is that COF ultimately did not deliver the ammunition it promised. Doc. 3 ¶ 28. But even if true, that allegation sheds no light on COF's state of mind at the time the representation was made. "A party fails to sufficiently allege fraud 'when the facts and circumstances are as consistent with honesty and good faith as they are with fraud.'" *Moses.com Secs., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1064 (8th Cir. 2005).

As to the fifth element, the Complaint is devoid of any allegations concerning COF's "intent that [its representation] should be acted on by [Top Gun] in the manner reasonably contemplated." *Renaissance Leasing*, 322 S.W.3d at 131-32. Finally, as to the eighth element, the Complaint contains no facts establishing Top Gun's "right to rely" on COF's representation. *Id.* at 1322. Top Gun merely pleads that it provided COF with two hundred thousand dollars "[i]n response to and [*in] justifiable reliance upon* COF Defendants' false representations." Doc. 3 ¶ 26 (emphasis added). But that allegation is a conclusory, "formulaic recitation" of the element, *Twombly*, 550 U.S. at 570, and also fails, under Rule 9(b), to allege "how" Top Gun's reliance was justified. *St. Luke's Hosp.*, 441 F.3d at 556; *see* Fed. R. Civ. Proc. 9(b).

Because Top Gun fails to allege sufficient facts to establish a claim for fraudulent misrepresentation, Count III is dismissed.

### 3. Count VI: Civil Conspiracy

COF argues that Top Gun "groups all Defendants together in its civil conspiracy claim, without identifying a single fact specific to COF's purported involvement or collusion with any other Defendant in the alleged conspiracy." Doc. 20 at 14. Top Gun counters that such group pleading "should be expected." Doc. 27 at 12.

To establish a claim for civil conspiracy under Missouri law, the plaintiff must show:
(1) two or more persons;
(2) with an unlawful objective;
(3) after a meeting of the minds;
(4) committed at least one act in furtherance of the conspiracy; and
(5) [the plaintiff] was thereby damaged.

15

*Western Blue Print Co. LLC v. Roberts*, 367 S.W.3d 7, 22 (Mo. banc 2012). "There can be no conspiracy between an agent and a principal." *Mika v. Central Bank of Kansas City*, 112 S.W.3d 82, 94 (Mo. App. 2003) (citations omitted). Thus, "the general rule holds that a corporation cannot conspire with its own employees." *Id.* (quotation marks and citation omitted). Because the Individual Defendants were employees of COF, they could not have conspired with COF. The only potential conspiracy could have been between COF and ADT. Top Gun alleges that "ADT purchased the assets of COF," Doc. 3 ¶ 47, and "ADT is merely the continuation of COF," *id.* ¶ 53, but it is unclear whether ADT and COF were in a parent-subsidiary relationship at the time of the alleged conspiracy.

The Complaint alleges that "Defendants entered into a meeting of the minds to induce Top Gun to provide them a large cash deposit . . . without the intention of supplying Top Gun with any corresponding benefit." Doc. 3 ¶ 42. An agreement to induce a breach of contract is sufficient for a conspiracy. *Western Blue*, 367 S.W.3d at 22. In furtherance of that agreement, COF and ADT "prepared false contracts and documents." Doc. 3 ¶ 44. Those allegations, taken as true, plausibly show that COF and ADT engaged in a civil conspiracy. The Motion is therefore denied with respect to Count VI.

### B. ADT

ADT also moves for partial dismissal under Rule 12(b)(6) for failure to state a claim against it on Counts V and VI. Doc. 19 at 2. For the following reasons, ADT's Motion is granted as to Count V and denied as to Count VI.

#### 1. Count V: Tortious Interference with a Business Expectancy

To plead a claim for tortious interference with a business expectancy under Missouri law, the plaintiff must allege sufficient facts that, taken as true, show:

(1) a valid business expectancy;
(2) defendant's knowledge of the relationship;
(3) a breach induced or caused by defendant's intentional interference;
(4) absence of justification; and
(5) damages.

*Rail Switching Servs., Inc. v. Marquis-Missouri Terminal, LLC*, 533 S.W.3d 245, 259 (Mo. App. 2017) (quotation marks and citations omitted). Where, as here, the business expectancy is created by a contract, the claim is actually one of tortious interference with a contract. The

only difference between the two is that the first element may be satisfied by establishing the existence of a contract. *See id.*

The Complaint alleges that "Top Gun established a clear, valid business expectancy with and from COF by virtue of its agreement with COF wherein, in exchange for payment, COF agreed to manufacture and deliver" ammunition. Doc. 3 ¶ 36. The Complaint fails to sufficiently allege the second, third, or fourth element, however. As to the second element, the Complaint alleges that ADT was "aware of Top Gun's business expectancy by virtue of their ownership of and/or involvement with COF." *Id.* ¶ 37. But if ADT owned COF, then it could not have interfered with the contract; a party cannot interfere with its own contract. The Complaint points to no other "involvement" ADT could have had with COF other than ADT's agreement to purchase COF and its subsequent ownership thereof.

As to the third element, Count V alleges that ADT "intentionally interfered with Top Gun's business expectancy with and from COF by inducing COF to breach its agreement with Top Gun." Doc. 3 ¶ 38. That is a conclusory, "formulaic recitation" of the third element and "will not do." *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678 (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). It does not allege, for example, that COF intended to perform on the contract until ADT's alleged interference. In fact, Top Gun elsewhere claims that COF never intended to perform the contract. Doc. 3 ¶ 25. ADT could not have induced COF to breach a contract that COF had intended to breach from the outset. Finally, as to the fourth element, Count V merely alleges that "[t]here was and is no justification for the actions of [ADT]." Doc. 3 ¶ 39. That too is a conclusory, "formulaic recitation" of the element and fails to provide any supporting facts. *Twombly*, 550 U.S. at 570.

Because Top Gun fails to allege sufficient facts that, taken as true, demonstrate a plausible claim for tortious interference against ADT, Count V is dismissed as to ADT.

### 2. Count VI: Civil Conspiracy

For the reasons previously stated, Count VI sufficiently alleges a cause of action for civil conspiracy between COF and ADT. ADT's Motion is therefore denied with respect to Count VI.

## CONCLUSION

The Individual Defendants' Motion to Dismiss for lack of personal jurisdiction is granted. They are therefore dismissed from this case. The LLC Defendants' Motion to Dismiss for lack of personal jurisdiction is denied; their Motion to Dismiss for failure to state a claim is granted with respect to Counts II, III, and V, but denied with respect to Count VI. Counts I, VI, VII, and VIII against the LLC Defendants remain.

Accordingly,

**IT IS HEREBY ORDERED** that the LLC Defendants' Motion to Dismiss, Doc. [19], is **GRANTED IN PART** and **DENIED IN PART**. Counts II, III, and V are dismissed. In all other respects, the LLC Defendants' Motion is **DENIED**.

**IT IS FURTHER ORDERED** that the Individual Defendants' Motion to Dismiss, Doc. [21], for lack of personal jurisdiction is **GRANTED**. Defendants Ruesch, Uicker, A. McCorkle, and B. McCorkle are dismissed from this case.

An accompanying Order of Dismissal shall be issued herewith.

Dated this 18th day of March, 2022.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE